STATE of Minnesota, Respondent,

v.

Daniel James RICK, Appellant.

No. A12–0058.

Court of Appeals of Minnesota.

Sept. 24, 2012.

Review Granted Nov. 27, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Elizabeth Johnston, Assistant County Attorney, Minneapolis, MN, for respondent.

Grant S. Smith, Landon J. Ascheman, Ascheman & Smith, LLC, St. Paul, MN, for appellant.

Considered and decided by LARKIN, Presiding Judge; CONNOLLY, Judge; and COLLINS, Judge.

## OPINION

LARKIN, Judge.

In this case of first impression, appellant challenges his felony conviction under Minn.Stat. § 609.2241, subd. 2(2), the knowing-transfer-of-communicable-disease statute. We conclude that Minn.Stat. § 609.2241, subd. 2, is subject to more than one reasonable interpretation and that the statute is therefore ambiguous. We further conclude that the legislature has not clearly indicated its intent to prevent the spread of communicable disease by criminalizing sexual penetration under circumstances in which one of the participants harbors an infectious agent and discloses that fact to the other participant prior to penetration. We reach this conclusion for several reasons, including that under the state's interpretation of the statute, only men, and not women, would be subject to criminal liability for identical conduct. And because the legislature has not clearly indicated its intent to criminalize the spread of communicable disease during informed sexual penetration, we construe section 609.2241 in appellant's favor under the rule of lenity and reverse his conviction.

## FACTS

Appellant Daniel James Rick is HIV-positive. In May 2009, he had a sexual relationship with another man, D.B. Shortly thereafter, D.B. tested positive for HIV. The state charged Rick with attempted first-degree assault under Minn.Stat. § 609.221, subd. 1 (2008), and Minn.Stat. § 609.2241, subd. 2(1), (2) (2008), the knowing-transfer-of-communicable-disease statute. The case was tried to a jury.

At trial, the state's first witness was Margaret Simpson, M.D., the director of the Red Door Clinic, Hennepin County's sexually transmitted disease clinic. She has worked in HIV patient care for more than 20 years. Dr. Simpson explained what HIV is, how it affects the body, how it is treated, and how it progresses to AIDS. Dr. Simpson then testified regarding the transmission of HIV, explaining that HIV is in the bloodstream and that it is transmitted to others by blood, vaginal secretions, and semen. She indicated that the exchange of these bodily fluids is required to transfer HIV to another person. Typical exchanges include needle-sharing, blood transfusions, and fluid exchange during sexual activity. According to Dr. Simpson, the person who is at the highest risk of contracting HIV is someone who receives bodily fluids, e.g., semen, in the rectum after engaging in anal sex.

The state also called D.B. as a witness. D.B. testified that he engaged in sexual activity with Rick on several occasions. On the first occasion, D.B. performed fellatio on Rick and received anal intercourse from Rick. D.B. testified that Rick did not use a condom and that he believed Rick ejaculated inside of him because, after the

anal intercourse, he had a bowel movement and observed a white substance on the toilet paper that he used. D.B. testified that Rick did not inform him that he was HIV positive before, during, or after their first sexual encounter. D.B. testified that he engaged in anal intercourse with Rick on two additional occasions. He believed that Rick ejaculated inside of him on one occasion, and he allowed Rick to ejaculate inside of him on the other occasion. D.B. testified that Rick did not disclose his HIV status on either occasion. D.B. later tested positive for HIV, in October 2009. In November 2009, D.B. once again engaged in sexual activity with Rick. D.B. testified that the two men engaged in anal intercourse and that each man ejaculated inside of the other.

After the state rested its case, Rick argued to the district court that Minn.Stat. § 609.2241, subd. 2(2), which applies to the "transfer of blood, sperm, organs, or tissue, except as deemed necessary for medical research or if disclosed on donor screening forms," does not apply to sexual acts. He also argued that application of subdivision 2(2) to sexual acts would be unconstitutional. Rick therefore argued that the district court should only instruct the jury under subdivision 2(1), which applies to "sexual penetration with another person without having first informed the other person that the person has a communicable disease." The court rejected Rick's argument based on a "plain reading of Subdivision 2(2)." Nevertheless, the district court indicated that it would provide the jury with a special-verdict form specifically asking the jury to determine whether the state had met its burden of proof under subdivision 2(1) and under subdivision 2(2).

After the district court ruled on the jury instructions, Rick testified on his own behalf. He explained that he tested positive for HIV on January 23, 2006, and that another test confirmed this result on February 6, 2006. He was counseled regarding his HIV-status and was advised to always use a condom.

Rick testified that before he engaged in anal intercourse with D.B., he told D.B. that he was HIV positive. He testified that D.B. did not appear to be bothered by this disclosure. Rick also testified that he asked D.B. if he was HIV positive. Rick learned that there was a probability that D.B. was already HIV positive, due to D.B.'s previous, unprotected sexual encounters with other people who are HIV positive. Rick acknowledged that he engaged in anal intercourse with D.B. after this exchange of information.

In closing argument, the state argued that Rick was guilty of violating subdivision 2(1) of the knowing-transfer-of-communicable-disease statute because he engaged in sexual penetration with D.B. without first informing D.B. of his HIV status. The state also argued that Rick was guilty of violating subdivision 2(2) because "[w]henever the male penis is inserted inside an anus or vagina, that is the attempt to transfer a fluid." The jury found Rick not guilty under subdivision 2(1), but guilty under subdivision 2(2), specifically rejecting the state's evidence that Rick did not disclose his HIV status to D.B.

In a posttrial motion for acquittal or new trial, Rick argued that the district court erred in instructing the jury under subdivision 2(2) because that subdivision only applies to medical procedures and that any other interpretation yields absurd results, results in strict liability, is contrary to legislative intent, leads to broad enforcement, is unconstitutionally vague, and violates the right to privacy. The district court denied Rick's motion for judgment of acquittal or new trial. The district court

granted Rick a downward dispositional departure from the presumptive guidelines sentence of 49 months in prison. The district court sentenced Rick to 49 months in prison but stayed execution of the sentence for five years. Rick appeals his conviction.

## ISSUE

I. Does Minn.Stat. § 609.2241, subd. 2(2), apply to acts of sexual penetration that result in a transfer of sperm?

## ANALYSIS

Rick has asserted several arguments for reversal of his conviction. Some are based on statutory construction. Others are based on constitutional challenges. One of Rick's arguments is that section 609.2241, subdivision 2, is ambiguous and the ambiguity should be resolved in his favor under the rule of lenity.[1] Because we are persuaded that the statute is ambiguous and that application of the rule of lenity requires reversal, we limit our analysis to that issue, without addressing Rick's constitutional challenges. *See Rickert v. State*, 795 N.W.2d 236, 240 (Minn.2011) ("Generally, we will not address a constitutional issue if there is another basis upon which the case can be decided."); *In re Senty–Haugen*, 583 N.W.2d 266, 269 n. 3 (Minn.1998) ("It is well-settled law that courts should not reach constitutional issues if matters can be resolved otherwise.").

## I.

■ The issue in this case is whether a person violates Minn.Stat. § 609.2241, the knowing-transfer-of-communicable-disease statute, by engaging in an act of sexual penetration that results in a transfer of sperm, even when the person first informed the other participant that he has a communicable disease. Minn.Stat. § 609.2241 provides, in part, that:

> It is a crime, which may be prosecuted under section 609.17, 609.185, 609.19, 609.221, 609.222, 609.223, 609.2231, or 609.224, for a person who knowingly harbors an infectious agent to transfer,[2] if the crime involved:
>
> (1) sexual penetration with another person without having first informed the other person that the person has a communicable disease;
>
> (2) transfer of blood, sperm, organs, or tissue, except as deemed necessary for medical research or if disclosed on donor screening forms; or
>
> (3) sharing of nonsterile syringes or needles for the purpose of injecting drugs.

Minn.Stat. § 609.2241, subd. 2.

Whether Minn.Stat. § 609.2241, subd. 2(2), encompasses an act of sexual penetration that results in a transfer of sperm is a question of first impression. We review issues of statutory interpretation de novo. *State v. Leathers*, 799 N.W.2d 606, 608 (Minn.2011). When interpreting a statute, our goal is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008). The "first step in interpreting a statute is to examine the statutory language to determine whether the words of the law are clear and

---

1. Rick raises application of the rule of lenity in a section of his appellate brief concerning the constitutionality of section 609.2241, subdivision 2(2). But at oral argument, Rick clarified that his lenity argument applies both to his statutory-interpretation and constitutional challenges.

2. " 'Transfer' means to engage in behavior that has been demonstrated epidemiologically to be a mode of direct transmission of an infectious agent which causes the communicable disease." Minn.Stat. § 609.2241, subd. 1(d) (2008).

free from all ambiguity." *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012). "[W]hen the legislature's intent is clear from plain and unambiguous statutory language, this court does not engage in any further construction and instead looks to the plain meaning of the statutory language." *State v. Bluhm*, 676 N.W.2d 649, 651 (Minn.2004) (quotation omitted). "A statute is ambiguous if its language is subject to more than one reasonable interpretation." *State v. Peck*, 773 N.W.2d 768, 772 (Minn.2009).

Rick interprets subdivision 2(1) as applying to all acts of sexual penetration, including those that result in a transfer of sperm. Under Rick's interpretation, acts of sexual penetration are governed solely by subdivision 2(1), and such acts cannot be a basis for criminal liability under subdivision 2(2). Rick's interpretation finds support in the language of subdivision 2. Subdivision 2 lists three alternative methods of violating section 609.2241. One of those methods specifically and exclusively addresses sexual penetration. *See* Minn. Stat. § 609.2241, subd. 2(1). The other two methods do not mention sexual penetration. *See id.*, subd. 2(2), (3). Based on the way subdivision 2 is written, it is reasonable to interpret subdivision 2(1) as providing the only means of imposing criminal liability for an act of sexual penetration under section 609.2241.

Moreover, Rick's interpretation finds support in the statutory definitions that are applicable under section 609.2241. As used in section 609.2241, " '[s]exual penetration' means any of the acts listed in section 609.341, subdivision 12, when the acts described are committed without the

use of a latex or other effective barrier." Minn.Stat. § 609.2241, subd. 1(e). Section 609.341, subdivision 12, defines sexual penetration, in relevant part, as "any of the following acts ... whether or not emission of semen occurs: (1) sexual intercourse, cunnilingus, fellatio, or anal intercourse." Minn.Stat. § 609.341, subd. 12(1) (2008). Thus, as defined under section 609.2241, sexual penetration includes anal intercourse, without the use of a latex or other effective barrier, even when semen is emitted.[3] From a practical perspective, under that definition, a transfer of sperm is likely. Thus, subdivision 2(1) is reasonably interpreted as applying to acts of sexual penetration that result in a transfer of sperm. But under subdivision 2(1), such conduct is not criminal so long as the infected person discloses that he has a communicable disease before engaging in the sexual penetration. Minn.Stat. § 609.2241, subd. 2(1).

The state argues that subdivision 2(2) "unambiguously applies" to sexual penetration. The state asserts that subparts (1) and (2) of Minn.Stat. § 609.2241, subd. 2, must be read together to give their words plain meaning and effect. The state argues that when the subparts are "[r]ead together with each other and with the definitions provided in subdivision 1, these subparts criminalize two separate sets of acts: (1) unprotected and unwarned sexual penetration of another person without emission of blood, sperm, or other bodily fluid and (2) sexual or blood-borne transmission of ... sperm ... regardless of sexual penetration or warning." In sum, the state's position is that "subpart (1)

---

**3.** Even the state acknowledged, at oral argument, that the definition of sexual penetration under section 609.2241 is problematic because it "would include with or without ejaculation," recognizing that this qualifier is contained in the criminal-sexual-conduct stat-ute that is referred to in section 609.2241. The state's concession buttresses our conclusion that the words of the statute are not "clear and free from all ambiguity." *Staab*, 813 N.W.2d at 72.

covers only sexual penetration *not* involving transmission of sperm or blood while subpart (2) covers any sexual (or blood related) activity *involving* the transmission of sperm or blood."

Thus, we are presented with two reasonable interpretations of Minn.Stat. § 609.2241, subd. 2. Under the state's interpretation, an act of sexual penetration that results in a transfer of sperm is always a basis for criminal liability, regardless of any pre-penetration disclosure of the presence of a communicable disease. Under Rick's interpretation, an act of sexual penetration that results in a transfer of sperm is not a basis for criminal liability, so long as there was pre-penetration disclosure of the presence of a communicable disease. The statute therefore is ambiguous.

If a statute is ambiguous, the intent of the legislature controls. *See* Minn.Stat. § 645.16 (2008). Intent may be ascertained by considering the mischief to be remedied, the object to be attained, the consequences of a particular interpretation, and the contemporaneous legislative history. *Id.* (3), (4), (6), (7). When ascertaining legislative intent, we presume that the legislature does not intend an unreasonable result or to violate the constitutions of the United States or of this state. Minn.Stat. § 645.17(1), (3) (2008).

But a rule of strict construction applies to penal statutes, under which all reasonable doubt concerning legislative intent should be resolved in favor of the defendant. *State v. Colvin*, 645 N.W.2d 449, 452 (Minn.2002). If construction of a statute is uncertain, the statute may not be interpreted to create a criminal offense that the legislature did not contemplate.

*Id.* Instead, "[w]hen the court is faced with an ambiguous criminal statute, the ambiguity should be resolved in favor of the criminal defendant in the interest of lenity." *Leathers*, 799 N.W.2d at 608. Under the rule of lenity, an ambiguous criminal law is narrowly construed. *State v. Zeimet*, 696 N.W.2d 791, 794 (Minn.2005). If doubt exists as to the legislative intent of a penal statute, the "doubt [ ] must be resolved in favor of the defendant." *State v. Serstock*, 402 N.W.2d 514, 516 (Minn.1987). In sum, although it is the legislature's prerogative to enact a law criminalizing the knowing and forewarned transfer of a communicable disease from one consenting adult to another during sexual penetration,[4] "[b]efore conduct hitherto innocent can be adjudged to have been criminal, the legislature must have defined the crime, and the act in question must clearly appear to be within the prohibitions or requirements of the statute." *State v. Finch*, 37 Minn. 433, 435, 34 N.W. 904, 905 (1887).

With those principles in mind, we turn our attention to legislative intent. Rick argues that the legislature intended to criminalize three types of conduct under the knowing-transfer statute: sexual penetration, medical procedures, and needle use. Rick argues that "[t]he legislature did not intend for the state to prosecute people like Mr. Rick under [subdivision] 2(2), which only applies to medical procedures." We observe that subdivision 2(2) uses the term "sperm" and not "semen." Minn.Stat. § 609.2241, subd. 2(2). To the extent that "sperm" is associated with medical procedures such as in vitro fertilization, the legislature's word choice, and its references to "medical research" and "donor screening forms," tends to support

---

4. Because it is not necessary to our resolution of this case, we do not address any constitutional questions that such a law might raise.

Rick's argument that the legislature intended subpart (2) to apply only to medical procedures and not to sexual penetration. *Id.*

Rick further argues that with regard to sexual penetration, the legislature "intended for the state to prove that an alleged victim did not know his partner had a communicable disease before engaging in sexual penetration" and that the "legislature sought to criminalize dishonesty with sexual partners about communicable disease, not sexual acts between fully informed, consenting adults." Rick's explanation of legislative intent is based on his review of the legislative history of section 609.2241 and audio recordings of the legislative hearings on the proposed legislation. *See* Minn.Stat. § 645.16(7) (stating that when ascertaining the intent of the legislature, a court may consider "the contemporaneous legislative history"). Rick quotes several statements made at the relevant hearings that tend to suggest that his interpretation of subdivision 2 is consistent with legislative intent.

The state argues that "[e]vidence of intent drawn from legislative committee discussion or floor debate is to be treated with caution." The state further argues that the legislature's intent was broader than "merely punishing individuals who lie about their disease status; it indicates an intent to prevent the spread of serious communicable disease."

Although we agree that the legislature generally intended to prevent the spread of serious communicable disease, we find little support for the state's contention that the legislature clearly and unambiguously intended to prevent the spread of disease by criminalizing *informed* sexual penetration between consenting adults. For example, Rick argues that "if the [l]egislature was truly concerned with the spread of disease as a public health issue and enacted [section 609.2241] to protect the public health, it would not have required the state to prove that the accused lied to his victim about his disease before engaging in sexual penetration in order to convict under [subdivision] 2(1)." We find this argument persuasive.

Moreover, we observe that the legislature's failure to include vaginal secretions within subdivision 2(2) suggests that the legislature did not intend subdivision 2(2) to prohibit all behavior that involves the exchange of infectious bodily fluids, including informed sexual penetration. Dr. Simpson testified that HIV is transmitted by the exchange of bodily fluids such as blood, vaginal secretions, and semen and that these fluids are exchanged during sexual activity.[5] Even though HIV can be transmitted from a woman to a man through the woman's vaginal secretions during sexual intercourse, subdivision 2(2) does not reference vaginal secretions. Subdivision 2(2) prohibits the "transfer" of four things: "blood, sperm, organs, or tissue." Minn.Stat. § 609.2241, subd. 2(2).

---

5. Dr. Simpson's testimony is consistent with current information from the Centers for Disease Control and Prevention (CDC). *See HIV Transmission,* CENTERS FOR DISEASE CONTROL AND PREVENTION, http://www.cdc.gov/hiv/resources/qa/transmission.htm (last updated March 25, 2010). According to the CDC, "it is possible for either partner to become infected with HIV through vaginal sex (intercourse). In fact, it is the most common way the virus is transmitted in much of the world. HIV can be found in the blood, semen [ ], pre-seminal fluid [ ], or vaginal fluid of a person infected with the virus. In women, the lining of the vagina can sometimes tear and possibly allow HIV to enter the body. HIV can also be directly absorbed through the mucous membranes that line the vagina and cervix. In men, HIV can enter the body through the urethra (the opening at the tip of the penis) or through small cuts or open sores on the penis." *Id.*

"Vaginal secretions" is noticeably absent from that list—even though the exchange of vaginal secretions during sexual intercourse is a demonstrated method of transferring HIV. If, as the state suggests, the legislature intended to prevent the spread of communicable disease by criminalizing all conduct that results in the exchange of bodily fluids known to spread communicable disease—including informed sexual penetration—it would have included vaginal secretions in subdivision 2(2), thereby preventing the spread of communicable disease from women to men. *See* Minn. Stat. § 645.16(3), (4) (stating that when ascertaining the intent of the legislature, a court may consider "the mischief to be remedied" and "the object to be attained").

Finally, we consider the consequences of the state's interpretation of subdivision 2. *See* Minn.Stat. § 645.16(6) (stating that when ascertaining the intent of the legislature, a court may consider "the consequences of a particular interpretation"). Once again, even though HIV can be transmitted from a woman to a man by the woman's vaginal secretions during sexual intercourse, subdivision 2(2) does not refer to vaginal secretions. Therefore, under the state's interpretation of subdivision 2, if a woman informs her male sexual partner that she has a communicable disease, engages in unprotected sexual intercourse with her partner, transfers vaginal secretions during the intercourse, and thereby risks the spread of the communicable disease, her conduct is not criminal. That result follows because the woman complied with the disclosure requirements of subpart (1), but she did not transfer a prohibited substance under subpart (2). *See* Minn.Stat. § 609.2241, subd. 2(1), (2).

On the other hand, if a man informs his female sexual partner that he has a communicable disease, engages in unprotected sexual intercourse with his partner, trans-

fers sperm during the intercourse, and thereby risks the spread of the communicable disease, his conduct is criminal. That result follows because, even though the man complied with the disclosure requirements of subpart (1), he transferred a prohibited substance under subpart (2). *See* Minn.Stat. § 609.2241, subd. 2(1), (2). If both semen and vaginal secretions are demonstrated modes of transmission of an infectious agent that causes a communicable disease, we do not discern an obvious reason why they would not be treated similarly. And we presume the legislature did not intend to enact a law that subjects only men, and not women, to criminal liability for identical conduct. *See* Minn.Stat. § 645.17(1), (3) (stating presumptions that legislature does not intend unreasonable result or to violate the constitutions of the United States or of this state).

In sum, the record simply does not support the state's argument that the legislature clearly intended to implement a broad public-health policy by criminalizing the spread of communicable disease during informed sexual penetration, especially where imposition of criminal liability under the state's interpretation of the statute depends on whether the infecting party is a man or a woman. And having determined that Minn.Stat. § 609.2241, subd. 2, is ambiguous, we will not forgo application of the rule of lenity in the absence of such a clear statement of legislative intent. *See State v. McGee*, 347 N.W.2d 802, 805–06 (Minn.1984) (stating that when applying the rule of lenity to the Minnesota Sentencing Guidelines, "commission policy and official commission interpretation should be looked to in resolving ambiguities"). Instead, we resolve all reasonable doubt regarding legislative intent in Rick's favor. *See Colvin*, 645 N.W.2d at 452.

Nor will this court forgo application of the rule of lenity in favor of policy objec-

tives. The parties make compelling arguments regarding the positive and negative policy implications associated with their respective constructions of Minn.Stat. § 609.2241. Resolution of these important policy concerns is a matter for the legislature and not this court. *See LaChapelle v. Mitten,* 607 N.W.2d 151, 159 (Minn.App. 2000) ("Because this court is limited in its function to correcting errors it cannot create public policy."), *review denied* (Minn. May 16, 2000). We limit our review to a determination of whether the legislature has unambiguously made it a crime for a person who has a communicable disease to transfer sperm during sexual penetration, even when the person has first disclosed his communicable-disease status. We conclude that under the language of section 609.2241, the legislature has not done so. And because subdivision 2 is ambiguous, we resolve the ambiguity in Rick's favor and hold that Minn.Stat. § 609.2241, subd. 2(2), does not apply to acts of sexual penetration, including those that result in a transfer of sperm.

### DECISION

Because Minn.Stat. § 609.2241, subd. 2(2), does not unambiguously apply to acts of sexual penetration, and because sexual penetration was the only method of sperm transfer proved by the state at trial, we reverse Rick's conviction under section 609.2241, subd. 2(2).

**Reversed.**

COLLINS, Judge (dissenting).*

In my view, the majority creates ambiguity in Minn.Stat. § 609.2241 (2008), the knowing-transfer-of-communicable-disease statute, by writing words and phrases into the plain language of the statute. Because the statute is unambiguous and applies to appellant's conduct, I respectfully dissent.

Section 609.2241, subdivision 2(1), criminalizes sexual penetration when the infected person fails to inform the other person that he has a communicable disease. Section 609.2241, subdivision 2(2), criminalizes the transfer of sperm. On its face, subdivision 2(2) applies to all activity involving the transfer of sperm by an infected person, except when the transfer of sperm is "deemed necessary for medical research" or "disclosed on donor screening forms." Minn.Stat. § 609.2241, subd. 2(2). Nonetheless, the majority concludes that subdivision 2(2) may reasonably be interpreted as having an exception for a transfer of sperm that occurs during sexual penetration. But nothing in the plain language of subdivision 2(2) supports this interpretation. The legislature did not except from subdivision 2(2) a transfer of sperm that occurs during sexual penetration, and we are not at liberty to write such an exception into the plain language of the statute. *See* Minn.Stat. § 645.16 (2010); *State ex rel. Rockwell v. State Bd. of Educ.,* 213 Minn. 184, 189, 6 N.W.2d 251, 256–57 (1942) (holding that a court may not write words of limitation into an otherwise unambiguous statute under the guise of interpretation).

The majority also concludes that the definition of "sexual penetration" supports appellant's interpretation of section 609.2241. The majority essentially concludes that subdivision 2(1) is rendered superfluous by the plain language of subdivision 2(2) because subdivision 2(1), by definition, includes the transfer of sperm. Again, however, the plain language of the statute does not support this interpretation.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

The term "sexual penetration" is defined in two relevant places. First, "sexual penetration" is defined in the knowing transfer of communicable disease statute and "means any of the acts listed in section 609.341, subdivision 12, when the acts described are committed without the use of a latex or other effective barrier." Minn. Stat. § 609.2241, subd. 1(e). Second, "sexual penetration" is defined in the criminal-sexual-conduct statutes and "means any of the following acts committed without the complainant's consent, except in those cases where consent is not a defense, whether or not emission of semen occurs." Minn.Stat. § 609.341, subd. 12 (2008).

Both definitions of "sexual penetration" take similar forms. They each begin by prohibiting the acts listed in section 609.341, subdivision 12.[6] Both definitions then qualify what those acts may or may not entail. The majority writes the qualification "whether or not emission of semen occurs" from the definition of "sexual penetration" as used in the criminal sexual conduct statutes into the definition of "sexual penetration" as used in the knowing-transfer-of-communicable-disease statute.

This interpretation is contrary to the plain language of the statute. The knowing-transfer-of-communicable-disease statute utilizes section 609.341, subdivision 12, for one thing and one thing only: "the acts listed." Minn.Stat. § 609.2241, subd. 1(e) (" 'Sexual penetration' means *any of the acts listed* in section 609.341, subdivision 12, when the acts described are committed without the use of a latex or other effective barrier." (emphasis added)). Because the qualification "whether or not emission of semen occurs" is not one of the acts listed in section 609.341, subdivision 12, it has no relevance to the definition of "sexual penetration" as used in the knowing-transfer-of-communicable-disease statute.[7]

Had the legislature intended to define "sexual penetration" as having the same definition given in section 609.341, subdivision 12, it could have done so. *See, e.g.*, Minn.Stat. § 609.066, subd. 1 (2010) (" 'Peace officer' has the meaning given in section 626.84, subdivision 1."); Minn.Stat. § 609.223, subd. 2 (2010) (" '[C]hild abuse' has the meaning given it in section 609.185, clause (5)."); Minn.Stat. § 609.2247, subd. 1(b) (2010) (" 'Family or household mem-

**6.** That list is as follows:

(1) sexual intercourse, cunnilingus, fellatio, or anal intercourse; or

(2) any intrusion however slight into the genital or anal openings:

(i) of the complainant's body by any part of the actor's body or any object used by the actor for this purpose;

(ii) of the complainant's body by any part of the body of the complainant, by any part of the body of another person, or by any object used by the complainant or another person for this purpose, when effected by a person in a position of authority, or by coercion, or by inducement if the child is under 13 years of age or mentally impaired; or

(iii) of the body of the actor or another person by any part of the body of the complainant or by any object used by the complainant for this purpose, when effected by a person in a position of authority, or by

coercion, or by inducement if the child is under 13 years of age or mentally impaired. Minn.Stat. § 609.341, subd. 12.

**7.** The majority nonetheless contends that it is acceptable to write this qualification into the plain language of the statute based, in part, on the similar position taken by the state at oral argument. But we are not compelled to adopt an unreasonable interpretation asserted by the parties at oral argument. *See State v. Hannuksela*, 452 N.W.2d 668, 673 n. 7 (Minn. 1990) (stating that "it is the responsibility of appellate courts to decide cases in accordance with law, and that responsibility is not to be diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities" (quotation omitted)); *see also State v. Leathers*, 799 N.W.2d 606, 608 (Minn.2011) (noting that we review issues of statutory interpretation de novo).

bers' has the meaning given in section 518B.01, subdivision 2."); Minn.Stat. § 325E.38, subd. 5 (2010) ("For purposes of this section, the 'CFC' has the definition given in section 116.70, subdivision 3."); Minn.Stat. § 253B.02, subd. 1a (2010) ("'Case manager' has the definition given in section 245.462, subdivision 4, for persons with mental illness."). But the legislature did *not* define "sexual penetration" in this way. Thus, under the plain language of the statute, subdivisions 2(1) and 2(2) criminalize different conduct. Subdivision 2(1) criminalizes "sexual penetration." By definition, a violation of subdivision 2(1) is triggered at the moment an infected person engages in one of the acts listed in section 609.341, subdivision 12. It matters not what happens thereafter, even if the infected person subsequently transfers sperm. Subdivision 2(2) criminalizes the transfer of sperm. Not all acts of sexual penetration result in the transfer of sperm, but under the plain language of the statute, those that do may be prosecuted under subdivision 2(2).

Appellant contends that drawing the line at ejaculation is absurd. On the contrary, that is the most logical line to draw, given the legislature's clear purpose in enacting the statute, which is to prevent the spread of communicable diseases. Health-care professionals advise that transferring bodily fluids is required to transfer a communicable disease. Thus, as Dr. Simpson testified in this case, one way to reduce the risk of transferring a communicable disease is simply to not "exchange bodily fluids." The statute accounts for this: subdivision 2(1) allows sexual penetration (defined as a sexual act committed without the use of a condom) provided there is full disclosure of the communicable disease. But once the transfer of bodily fluids occurs, there is a great risk of transferring the communicable disease to others. Indeed, as Dr. Simpson testified in this case,

someone who receives bodily fluids, i.e., semen, in the rectum is at the highest risk of receiving a communicable disease from an infected person. The statute accounts for this as well: subdivision 2(2) prohibits behavior which involves the exchange of bodily fluids. Thus, any reasonable person reading this statute would understand that he may engage in unprotected sexual activity as long as he discloses his disease status to the other person, but that he should not transfer sperm to the other person, just as he has been so advised by his health-care professional.

As I view it, the language in section 609.2241 is clear and unambiguous. Subdivision 2(2) prohibits the "transfer of . . . sperm" and, because appellant's conduct involved the "transfer of . . . sperm," he may be prosecuted under this subdivision notwithstanding the fact that his conduct also involved sexual penetration. Moreover, this interpretation of the statute is the only interpretation that effectuates the intent of the legislature: to prevent the spread of communicable diseases. *See* Minn.Stat. § 645.16 (stating that the goal of statutory interpretation and construction "is to ascertain and effectuate the intention of the legislature"). The legislature criminalized the knowing transfer of communicable diseases, communicable diseases are transferred through the exchange of bodily fluids, and subdivision 2(2) explicitly prohibits the transfer of such fluids, regardless of the type of activity engaged in. To me, there is no other reasonable interpretation of this statute. Therefore, I would address the constitutional arguments raised by appellant.