STATE of Minnesota, Appellant,

v.

**Daniel James RICK, Respondent.**

**No. A12–0058.**

Supreme Court of Minnesota.

Aug. 21, 2013.

Lori Swanson, Attorney General, Saint Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Jane N.B. Holzer, Assistant County Attorneys, Minneapolis, MN, for appellant.

Grant S. Smith, Landon J. Ascheman, Ascheman & Smith, LLC, Saint Paul, MN, for respondent.

Lynn Mickelson, Minnesota AIDS Project, Minneapolis, MN; and Jerry A. Burg, The Uptown Business Center, Minneapolis, MN, for amicus curiae Minnesota AIDS Project.

Benjamin J. Feist, Sandra E. Feist, Grell & Feist LLC, Minneapolis, MN; Alan E. Schoenfeld, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY; and Christopher E. Babbitt, Susan S. Friedman, Gerard Sinzdak, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., for amici curiae The Association of Nurses in AIDS Care, The HIV Medicine Association of the Infectious Diseases Society of America, and The National Alliance of State and Territorial AIDS Directors.

Teresa Nelson, American Civil Liberties Union of Minnesota, Saint Paul, MN; Scott A. Schoettes, Christopher R. Clark, Lambda Legal Defense and Education Fund, Chicago, IL; and Leslie Cooper, Chase Strangio, American Civil Liberties Union, New York, NY, for amici curiae ACLU, ACLU of Minnesota, Center for HIV Law and Policy, Lambda Legal Defense and Education Fund, and OutFront Minnesota.

## OPINION

GILDEA, Chief Justice.

The State of Minnesota challenges a decision of the court of appeals reversing respondent Daniel James Rick's conviction of attempted first-degree assault by communicable disease, in violation of Minn. Stat. § 609.2241 (2012). A jury found Rick guilty of attempted first-degree assault by transferring a communicable disease, in violation of Minn.Stat. § 609.2241, subd. 2(2), which applies to the "transfer of blood, sperm, organs, or tissue." But the jury found Rick not guilty of violating Minn.Stat. § 609.2241, subd. 2(1), which applies to "sexual penetration ... without having first informed the other person" that the defendant has a communicable

disease. The court of appeals reversed Rick's conviction. Because we conclude that Minn.Stat. § 609.2241, subd. 2(2) applies to the donation or exchange for value of blood, sperm, organs, or tissue and therefore does not apply to acts of sexual conduct, we affirm the decision of the court of appeals.

In early 2006, Rick learned that he is HIV positive and received counseling as to the means of transmitting and preventing transmission of the disease. In early 2009, Rick met D.B. through a social website. Rick and D.B. engaged in consensual sexual activity on several occasions. During these sexual encounters, Rick either ejaculated inside D.B.'s rectum or outside of and onto D.B.'s body. In October 2009, D.B. tested positive for HIV. The next month, D.B. and Rick again engaged in consensual anal intercourse and ejaculated inside each other.

The State charged Rick with one count of attempted first-degree assault by communicable disease for violating Minn.Stat. § 609.2241, subd. 2 ("the communicable-disease statute"). As relevant here, subdivision 2 defines two different acts that are criminal when committed by a person with a communicable disease. Under subdivision 2(1), "sexual penetration" with another without first disclosing the presence of the disease is a crime. *Id.*, 2(1). And under subdivision 2(2), the "transfer of blood, sperm, organs, or tissue" is a crime. *Id.*, 2(2). The State alleged that Rick attempted to transfer a communicable disease to D.B. by either sexually penetrating D.B. without first informing D.B. that Rick had a communicable disease, in violation of subdivision 2(1), or by a transfer of sperm to D.B., in violation of subdivision 2(2).

Rick argued that he did not violate subdivision 2(1) because he disclosed his HIV status to D.B. prior to their sexual conduct. With regard to subdivision 2(2),

Rick contended that subdivision 2(2) does not apply to sexual conduct and that if subdivision 2(2) does apply to sexual conduct, it is unconstitutional. The district court rejected Rick's statutory argument based on a "plain reading of Subdivision 2(2)" and declined to address Rick's constitutional challenges. But the court agreed to provide the jury with a special verdict form that bifurcated subdivisions 2(1) and 2(2) of the communicable-disease statute.

Ultimately, the jury found Rick not guilty of violating Minn.Stat. § 609.2241, subd. 2(1), but guilty of violating Minn. Stat. § 609.2241, subd. 2(2). The district court denied Rick's motion for judgment of acquittal or a new trial. The court convicted Rick under subdivision 2(2) and imposed a sentence of 49 months' imprisonment, but stayed execution of the sentence for 5 years.

The court of appeals reversed Rick's conviction in a split decision. *State v. Rick*, 821 N.W.2d 610 (Minn.App.2012). The majority concluded that Minn.Stat. § 609.2241, subd. 2(2) is ambiguous because it is subject to more than one reasonable interpretation. *Rick*, 821 N.W.2d at 615. Specifically, the court determined that subdivision 2(2) could reasonably apply only to medical procedures, or it could reasonably apply to *all* methods of conveying sperm. 821 N.W.2d at 615. Applying the rule of lenity, the court adopted the narrower of the two reasonable interpretations and concluded that subdivision 2(2) applies only to medical procedures. 821 N.W.2d at 618. In light of that conclusion, the court did not reach Rick's constitutional challenges. *Id.* at 613. We granted the State's petition for further review.

On appeal, the State argues that subdivision 2(2) of the communicable-disease statute—the provision that is the subject of Rick's conviction—criminalizes sexual conduct that involves the transfer of

sperm. Rick, on the other hand, argues that only subdivision 2(1) of the communicable-disease statute—the provision that he was acquitted of violating—applies to sexual conduct. In addition, Rick argues that if subdivision 2(2) *does* apply to sexual conduct, it is unconstitutional.

## I.

We turn first to the issue of whether Minn.Stat. § 609.2241, subd. 2(2) applies to sexual conduct. The communicable-disease statute provides, in relevant part:

It is a crime, which may be prosecuted under [Minnesota statutes criminalizing various degrees of murder, assault, and attempts thereof], for a person who knowingly harbors an infectious agent to transfer, if the crime involved:

(1) sexual penetration with another person without having first informed the other person that the person has a communicable disease; [or]

(2) transfer of blood, sperm, organs, or tissue, except as deemed necessary for medical research or if disclosed on donor screening forms....

Minn.Stat. § 609.2241, subd. 2.[1]

■ Whether Rick's conduct meets the definition of a "transfer of ... sperm" in subdivision 2(2) of the communicable-disease statute presents a question of statutory interpretation that we review de novo. *See Clark v. Lindquist,* 683 N.W.2d 784, 785 (Minn.2004). The objective of statutory interpretation is to ascertain and effectuate the Legislature's intent. *City of Brainerd v. Brainerd Invs. P'ship,* 827 N.W.2d 752, 755 (Minn.2013) (citing Minn. Stat. § 645.16 (2012)). If the Legislature's intent is clear from the statute's plain and unambiguous language, then we interpret the statute according to its plain meaning

without resorting to the canons of statutory construction. *See id.; see also Laase v. 2007 Chevrolet Tahoe,* 776 N.W.2d 431, 435 (Minn.2009) (distinguishing between "canons of interpretation," which are used to determine if a statute is ambiguous, and "canons of construction"). But, if a statute is susceptible to more than one reasonable interpretation, then the statute is ambiguous and we may consider the canons of statutory construction to ascertain its meaning. *See Lietz v. N. States Power Co.,* 718 N.W.2d 865, 870–71 (Minn.2006); *see also* Minn.Stat. § 645.16 (listing canons of construction used to determine legislative intent for an ambiguous statute).

## A.

■ The parties disagree on whether Minn.Stat. § 609.2241 is ambiguous. The State contends that the statute is not ambiguous and that the plain language of subdivision 2(2) prohibits Rick's conduct. For his part, Rick argues that the court of appeals correctly concluded that the statute is ambiguous. We agree with Rick and the court of appeals that subdivision 2(2) of the communicable-disease statute is ambiguous.

■ When interpreting a statute, we generally are guided by the definitions provided by the Legislature. *See State v. Young,* 268 N.W.2d 428, 429 (Minn.1978). The word "transfer" is statutorily defined—as a verb. Minn.Stat. § 609.2241, subd. 1(d) (defining "transfer" as "to engage in behavior that has been demonstrated epidemiologically to be a mode of direct transmission of an infectious agent which causes the communicable disease"). But the statute confusingly uses the word "transfer" twice: once in the introductory clause of subdivision 2, as a verb; and

---

1. On appeal, it is undisputed that Rick knowingly harbors an infectious agent and transmitted sperm to D.B. during informed consensual sex.

again in subdivision 2(2), as a noun. We conclude that the statutory definition of the word "transfer" applies only to the introductory clause of subdivision 2, and not to subdivision 2(2). At least three reasons support this conclusion.

First, as the State conceded at oral argument, subdivision 2(2) of the communicable-disease statute essentially provides that "[i]t is a crime ... to transfer, if the crime involved ... transfer." If we applied the same statutory definition of "transfer" in both places, our interpretation would render the statute redundant and we would fail to give independent effect to every word in the statute. *See* Minn.Stat. § 645.16 ("Every law shall be construed, if possible, to give effect to all its provisions."); *see also Amaral v. St. Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn. 1999) (stating that "[w]henever it is possible, no word, phrase, or sentence should be deemed superfluous, void, or insignificant").

Second, while the statutory definition of the verb "transfer" makes sense when applied to the Legislature's use of that word as a verb in the introductory clause of subdivision 2, the statute would violate the rules of grammar if we applied the statutory definition to the *noun* "transfer" in subdivision 2(2). *See* Minn.Stat. § 645.08(1) (2012) (stating that statutory "words and phrases are construed according to rules of grammar"). Indeed, if the statutory definition were inserted into subdivision 2(2) of the communicable-disease statute, it would state, in relevant part:

> It is a crime, ... for a person who knowingly harbors an infectious agent [*to engage in behavior that has been demonstrated epidemiologically to be a mode of direct transmission of an infectious agent which causes the communicable disease* ], if the crime involved:
> ...

> (2) [*to engage in behavior that has been demonstrated epidemiologically to be a mode of direct transmission of an infectious agent which causes the communicable disease* ] of blood, sperm, organs, or tissue, except as deemed necessary for medical research or if disclosed on donor screening forms....

Minn.Stat. § 609.2241, subd. 2 (emphasis added to highlight inclusion of definition).

Finally, under the statutory definition of "transfer," the direct object of the word "transfer"—the thing being transferred— is the "infectious agent." Minn.Stat. § 609.2241, subd. 1(d). The definition fits with the use of the word "transfer" in the introductory paragraph of subdivision 2, which states that it is a crime for a person who "harbors an infectious agent to transfer" that agent. But the statutory definition does not fit well with the use of the word "transfer" as a noun in subdivision 2(2) because the Legislature is not addressing the "transfer" of an "infectious agent" in this provision, but is addressing the "transfer" of "blood, sperm, organs, or tissue."

For all of these reasons, we conclude that the statutory definition of "transfer" applies to the use of the word "transfer" in the introductory clause of section 609.2241, but that the statutory definition should not apply in subdivision 2(2). Accordingly, we turn next to determining the meaning of "transfer" as that word is used in subdivision 2(2).

■ In the absence of an applicable statutory definition, we generally give statutory terms their common meaning. *See State v. Leathers,* 799 N.W.2d 606, 609 (Minn.2011) (citing Minn.Stat. § 645.08). The ordinary definition of the noun "transfer" is "[t]he conveyance or removal of something from one place, person, or thing to another." *The American Heritage Dic-*

*tionary* 1844 (5th ed.2011). That definition is consistent with the State's position, which is that Minn.Stat. § 609.2241, subd. 2(2) applies to the conveyance of sperm in any manner whatsoever, including sexual conduct. Indeed, neither subdivision 2(2) nor the common definition of "transfer" specifies the means by which a conveyance must occur. Thus, if we define "transfer" according to its common meaning, subdivision 2(2) applies broadly to *all* methods of conveying sperm. Under this broad meaning, the statute covers Rick's conduct.

Rick contends, however, that we should reject such a broad reading of subdivision 2(2) because it is unreasonable. Rick notes that sexual penetration by a person with a communicable disease is not criminal under subdivision 2(1) if the presence of the disease is disclosed. *See* Minn.Stat. § 609.2241, subd. 2(1) (criminalizing "sexual penetration with another person without having first informed the other person that the person has a communicable disease"). According to Rick, there would be no purpose for the disclosure exception in subdivision 2(1) if informed sexual conduct were criminal under subdivision 2(2).

To be sure, the broad interpretation of "transfer" that the State advocates would significantly limit the disclosure exception in subdivision 2(1). But even if both subdivision 2(1) and subdivision 2(2) apply to sexual penetration, the disclosure exception in subdivision 2(1) would not be meaningless. Rather, the disclosure exception would operate only in situations in which informed sexual penetration occurs without the transmission of sperm or blood. While it is possible for a person to violate both subdivisions 2(1) and 2(2) simultaneously under that interpretation—by conveying sperm or blood to another person during uninformed sexual penetration—it also is possible to violate subdivision 2(1) and not subdivision 2(2), or vice versa.

We therefore cannot conclude that applying the common definition of "transfer" leads to an unreasonable interpretation of Minn.Stat. § 609.2241, subd. 2(2).

A second interpretation, advanced by Rick, is that the word "transfer" in Minn. Stat. § 609.2241, subd. 2(2) should be ascribed a technical meaning—namely, that it refers to specific types of transactions, such as donations of blood or sperm for medical reasons. While we generally interpret statutory words according to their common meaning, our textual canons of interpretation provide that " 'technical words and phrases ... are construed according to [their] special meaning.' " *Staab v. Diocese of St. Cloud,* 813 N.W.2d 68, 72 (Minn.2012) (quoting Minn.Stat. § 645.08(1) (2010)). *Black's Law Dictionary* defines "transfer" as "[a]ny mode of disposing of or parting with an asset or an interest in an asset, including a gift, the payment of money, release, lease, or creation of a lien or other encumbrance." *Black's Law Dictionary* 1636 (9th ed.2009). Unlike the broad, common definition of "transfer" discussed above, the more technical *Black's Law Dictionary* definition limits the meaning of "transfer" to a transaction involving property, in which that property is donated or exchanged for value. That special meaning makes sense with respect to subdivision 2(2) only if "blood, sperm, organs, or tissue" are characterized as assets that can be donated or exchanged for value. We must therefore examine whether the word "transfer" could reasonably be ascribed that special meaning in the context of subdivision 2(2).

Whether a word should be ascribed a technical or special meaning depends in part upon the context in which the word appears. *State v. Wertheimer,* 781 N.W.2d 158, 162–63 (Minn.2010). In addition, "the meaning of doubtful words in a legislative act may be determined by

reference to their association with other associated words and phrases." *Wong v. Am. Family Mut. Ins. Co.*, 576 N.W.2d 742, 745 (Minn.1998) (citation omitted) (internal quotation marks omitted). Under the associated-words canon, when context suggests that a group of words have something in common, each word should be ascribed a meaning that is consistent with its accompanying words. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law* 195 (2012).

Here, Minn.Stat. § 609.2241, subd. 2(2) criminalizes the "transfer of blood, sperm, organs, or tissue, except as deemed necessary for medical research or if disclosed on donor screening forms." Notably, the exceptions in subdivision 2(2) for situations involving "medical research" or "donor screening forms" suggest that subdivision 2(2) addresses transfers made for medical reasons. Although the conveyance of blood or sperm may be achieved through a variety of conduct, the associated-words canon directs us to ascribe a meaning that is consistent with neighboring words and a common attribute shared by those words. *See Beecham v. United States*, 511 U.S. 368, 371, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994). Organs and tissue are conveyed almost exclusively through a donative transaction. *See generally, e.g.*, Minn.Stat. ch. 525A (2012) (governing anatomical gifts). Blood and sperm can similarly be donated—or sometimes exchanged for money—through a medical procedure. Thus, a common attribute shared by the terms blood, sperm, organs, and tissue is that, in the medical context, they are assets that a person can either donate or exchange for value. That characterization is consistent with the special meaning of "transfer" articulated in *Black's Law Dictionary.*

In light of its surrounding context, we conclude that the word "transfer" could reasonably be ascribed a special meaning in Minn.Stat. § 609.2241, subd. 2(2). Under this second reasonable interpretation of "transfer" as used in Minn.Stat. § 609.2241, subd. 2(2), the statute applies only to the donation or exchange for value "of blood, sperm, organs, or tissue, except as deemed necessary for medical research or if disclosed on donor screening forms." When we interpret "transfer" according to this special meaning, the transmission of sperm through sexual conduct falls outside the scope of liability created by subdivision 2(2). While sperm might be characterized as an asset or property in a medical context, such as with respect to fertility, that characterization is not applicable to sperm transmitted to another through sexual conduct.

Based on our analysis, we conclude that Minn.Stat. § 609.2241, subd. 2(2) is subject to more than one reasonable interpretation. Because the statute is ambiguous, we must look beyond its wording to ascertain the Legislature's intent. *See State v. Mauer*, 741 N.W.2d 107, 111 (Minn.2007).

### B.

■■■ Having concluded that the communicable-disease statute is ambiguous, we turn next to resolve that ambiguity. We have recognized that when a criminal statute "is ambiguous, we construe it narrowly according to the rule of lenity." *State v. Maurstad*, 733 N.W.2d 141, 148 (Minn.2007). We may also consider extrinsic canons of statutory construction to ascertain the statute's meaning, including the statute's legislative history. *See Laase*, 776 N.W.2d at 435 n. 2; *see also* Minn.Stat. § 645.16 (providing that we may consider, among other factors, "the contemporaneous legislative history" when ascertaining the intent of the Legislature).

Our application of the rule of lenity, together with the relevant legislative history of Minn.Stat. § 609.2241, compels the conclusion that "transfer" in subdivision 2(2) addresses the donation or exchange for value of "blood, sperm, organs, or tissue."

■■■■■ Turning first to the rule of lenity, that rule instructs us to adopt the narrower of two reasonable interpretations of an ambiguous criminal statute and to resolve the ambiguity in favor of the criminal defendant. *Leathers,* 799 N.W.2d at 608; *see also Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."). The rule of lenity "vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed." *United States v. Santos,* 553 U.S. 507, 514, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008). Consistent with the rule of lenity, we adopt the narrower of the two reasonable interpretations of Minn.Stat. § 609.2241, subd. 2(2). Under that interpretation, subdivision 2(2) does not criminalize the transmission of sperm through sexual conduct. Rather, subdivision 2(2) addresses transactions in which sperm is donated or sold for a medical reason.

■■■■ This narrower interpretation also is consistent with relevant legislative history. Broadly speaking, the legislative intent in enacting the communicable disease statute was to criminalize different types of behavior that could spread a communicable-disease. Subdivision 2(1) criminalizes transmission of the disease through sexual conduct. And subdivision 2(2) criminalizes transmission of the disease through the donation or sale of blood, sperm, organs, or tissue for medical purposes. Our careful review of the legislative history con-

firms this intent. For example, earlier proposed versions of the communicable-disease statute used "donate[ ] or attempt[ ] to donate" in relation to "blood, sperm, organ, or tissue." 3 Journal of the House of Representatives 3533 (79th Minn. Leg. May 2, 1995) ("[T]he defendant knowingly *donated or attempted to donate blood, sperm, organ, or tissue, except as deemed necessary for medical research, or disclosed HIV status on donor screening forms* ...." (emphasis added)); *see also id.* at 3534 ("[T]he person infected with the communicable disease *disclosed his or her infection status on donor screening forms to donate blood, sperm, organs or tissue* " .... (emphasis added)). Although the conference committee replaced the word "donate" with the word "transfer" in the final language of the bill, the language of subdivision 2(2) otherwise continues to suggest that the Legislature intended subdivision 2(2) to address medical transactions.

In sum, the rule of lenity, together with the relevant legislative history of the communicable-disease statute, indicates that the Legislature's use of the word "transfer" in subdivision 2(2) refers to the donation or exchange for value of "blood, sperm, organs, or tissue." Accordingly, we resolve the ambiguity in Minn.Stat. § 609.2241, subd. 2(2) by concluding that subdivision 2(2) applies only to the donation or exchange for value "of blood, sperm, organs, or tissue, except as deemed necessary for medical research or if disclosed on donor screening forms." We acknowledge that the communicable-disease statute presents difficult interpretation issues and that the Legislature may have, in fact, intended something different. If that is the case, however, it is the Legislature's prerogative to reexamine the communicable-disease statute and amend it accordingly.

In light of our foregoing interpretation of Minn.Stat. § 609.2241, subd. 2(2), and based on the record before us, we hold that Rick's conviction under that provision must be reversed. Indeed, subdivision 2(2) is inapplicable to Rick's conduct, which indisputably did not involve the donation or exchange for value of his sperm. We therefore affirm the court of appeals' decision reversing Rick's conviction.[2]

Affirmed.

STRAS, J., took no part in the consideration or decision of this case.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

**2.** Because we conclude that Rick's conduct did not violate Minn.Stat. § 609.2241, subd. 2(2), we decline to decide the constitutional issues presented by the State's appeal. *See, e.g., State v. Bourke,* 718 N.W.2d 922, 929 & n. 7 (Minn.2006) (declining to address constitutional issues raised by the appellant in light of the resolution of the case on statutory grounds).