STATE OF MINNESOTA

IN SUPREME COURT

A14-1652

Court of Appeals                                                    Wright, J.

Wayzata Nissan, LLC,

                    Appellant,

vs.                                                    Filed: February 17, 2016
                                                       Office of Appellate Courts

Nissan North America, Inc.,

                    Respondent,

Stephen J. McDaniels, et al.,

                    Respondents.

                    _____


Christopher W. Madel, Aaron R. Thom, Nicole S. Frank, Robins Kaplan LLP, Minneapolis, Minnesota, for appellant.

John Rock, Bruce L. Gisi, Rock Law LLC, Minneapolis, Minnesota; and

William N. Berkowitz, Brandon L. Bigelow, Caleb J. Schillinger, Seyfarth Shaw LLP, Boston, Massachusetts, for respondent Nissan North America, Inc.

Timothy J. Grande, Patrick C. Summers, DeWitt Mackall Crounse & Moore S.C., Minneapolis, Minnesota, for respondents Stephen J. McDaniels, et al.


                    _____

1.      A challenge to the proposed relocation of a motor vehicle dealership under the Minnesota Motor Vehicle Sale and Distribution Act, Minn. Stat. §§ 80E.01-.17 (2014), is not rendered moot by the relocation and operation of the dealership.

2.      The notice requirement of Minn. Stat. § 80E.14, subd. 1, applies on the date that a manufacturer develops an intention to authorize the relocation of a motor vehicle dealership.

3.      The exception for the "relocation of an existing dealer" in Minn. Stat. § 80E.14, subd. 1, does not apply when the relocated dealership will be operated by a new dealer.

Affirmed in part, reversed in part, and remanded.

O P I N I O N

WRIGHT, Justice.

In May 2014, motor vehicle manufacturer Nissan North America, Inc. (Nissan) and prospective Nissan dealer Stephen McDaniels[1] sought to relocate a Nissan dealership from Bloomington to a location 7.6 miles from a dealership operated by appellant Wayzata Nissan, LLC (Wayzata). Wayzata challenged the relocation under the Minnesota Motor Vehicle Sale and Distribution Act (MVSDA), Minn. Stat.

---

[1]      Two corporate entities owned by McDaniels—EP Motors, Inc. and McEP Investments, LLC—also were involved in the transactions at issue in this case. Because the distinction between these three respondents is not germane to this appeal, we refer to EP Motors, McEP Investments, and McDaniels collectively as "McDaniels."

§§ 80E.01-.17 (2014), and later moved for a temporary restraining order and a good-cause hearing pursuant to Minn. Stat. § 80E.14, subd. 1. The district court denied Wayzata's motion, concluding that the planned relocation fell within the exception in section 80E.14, subdivision 1, for the "relocation of an existing dealer." The court of appeals affirmed. We conclude that (1) this appeal is not moot even though the relocation at issue already has occurred; (2) the notice and good-cause requirements of Minn. Stat. § 80E.14, subd. 1, apply on the date that a manufacturer develops an intention to relocate a dealership; and (3) the existing-dealer exception does not apply when the relocation of a dealership is accompanied by a change in the person or entity operating the dealership. Accordingly, we affirm the court of appeals' decision on mootness, reverse on the merits, and remand to the district court for further proceedings consistent with this opinion.

I.

Feldmann Imports Inc. (Feldmann) formerly operated a Nissan motor vehicle dealership in Bloomington. In March 2014, Feldmann executed an asset purchase agreement (APA) with a third party for the sale of the Bloomington dealership. Because Feldmann sought to retain the Bloomington property for other purposes, the APA required the buyer to relocate the dealership. The APA specified a potential new dealership location in Eden Prairie that is 7.6 miles from Wayzata's dealership.

By the terms of Feldmann's franchise agreement, Nissan maintained a right of first refusal on the sale of the Feldmann dealership. Nissan exercised its right of first refusal

3

on the APA and later assigned its right to McDaniels. McDaniels then purchased the real property in Eden Prairie that was referenced in the APA. Although McDaniels had operated motor vehicle dealerships pursuant to franchises with other manufacturers, McDaniels had never held a franchise agreement with Nissan.

After hearing rumors of the proposed relocation, Wayzata sent a letter to Nissan inquiring about its intentions. Wayzata feared that the close proximity of the relocated dealership would impinge on Wayzata's primary geographic area of business. In a letter dated May 8, 2014, Nissan responded that it intended to allow Feldmann or Feldmann's successor in interest to relocate the Bloomington dealership to a location within 10 miles of the Wayzata dealership.

On July 9, 2014, McDaniels entered into a sublease with Feldmann for the Bloomington property, contingent on McDaniels's closing on the purchase of the Bloomington dealership. Nissan approved McDaniels as a Nissan dealer, as well as the relocation of the Bloomington dealership, on July 24. On July 28, McDaniels closed on the purchase of the Bloomington dealership and immediately commenced operation of the dealership in Bloomington, pending its relocation to Eden Prairie.

Wayzata filed an action against Nissan and McDaniels in Hennepin County District Court and subsequently moved for a temporary restraining order pursuant to the MVSDA. Specifically, Minn. Stat. § 80E.14, subd. 1, requires a motor vehicle manufacturer to notify an existing dealer of the intention to establish or relocate a dealership to a location within 10 miles of the existing dealer's dealership. The existing

4

dealer may then obtain a temporary injunction until a court determines that the establishment or relocation of the dealership is supported by good cause. Minn. Stat. § 80E.14, subd. 1. But the "relocation of an existing dealer" is not subject to the notice and good-cause requirements of the statute. *Id.* Nissan and McDaniels contended that Nissan planned to relocate an "existing dealer" and, therefore, Wayzata had no right to challenge the relocation.

The district court denied Wayzata's motion. As an initial matter, the district court held that the notice and good-cause requirements of the statute applied on May 8, 2014—the date of Nissan's letter to Wayzata—at the latest. Further, the district court found that McDaniels was not an "existing dealer" on that date. Yet, the district court held that Nissan and McDaniels were exempt from the statute's notice and good-cause requirements. Concluding that the MVSDA uses the words "dealer" and "dealership" interchangeably, the district court held that the existing-dealer exception applied because Nissan intended to relocate an existing *dealership* from Bloomington to Eden Prairie.

Wayzata filed a notice of appeal on September 26, 2014. McDaniels completed the relocation of the Bloomington dealership on November 1, 2014—while the appeal was pending—and commenced operations in Eden Prairie. Before the court of appeals, Nissan and McDaniels argued that the relocation of the dealership rendered the appeal moot. The court of appeals held that the appeal was not moot because the district court could enjoin McDaniels from continuing operations at the Eden Prairie location. *Wayzata Nissan, LLC v. Nissan N. Am., Inc.*, 865 N.W.2d 75, 79 (Minn. App. 2015). On

the merits, the court of appeals affirmed the district court's decision, but on different grounds. The court of appeals held that McDaniels was an "existing dealer" on the date that the Bloomington dealership was physically relocated to Eden Prairie and, therefore, the existing-dealer exception applied. *Id.* at 82. We granted Wayzata's petition for review.

## II.

As a threshold matter, we must address the issue of mootness. Nissan and McDaniels argue that this appeal is moot because Wayzata sought to enjoin the relocation of the Bloomington dealership, and the dealership now has been relocated. Wayzata contends that the district court could enjoin the *operation* of the Eden Prairie dealership. Moreover, Wayzata cites Minn. Stat. § 80E.17, which provides that "any person whose business or property is injured by a violation" of the MVSDA "may bring a civil action to enjoin further violations and to recover the actual damages sustained."

We consider only live controversies, and an appeal will be dismissed as moot when intervening events render a decision on the merits unnecessary or an award of effective relief impossible. *In re Minnegasco*, 565 N.W.2d 706, 710 (Minn. 1997). But an appeal is not moot when a party could be afforded effective relief. *Hous. & Redevelopment Auth. ex rel. City of Richfield v. Walser Auto Sales, Inc.*, 641 N.W.2d 885, 888 (Minn. 2002). We review the issue of mootness de novo. *Dean v. City of Winona*, 868 N.W.2d 1, 4 (Minn. 2015).

6

In its motion for a temporary restraining order, Wayzata sought to prevent Nissan and McDaniels from establishing or operating the Eden Prairie dealership pending the district court's good-cause determination. On appeal, Wayzata seeks a remand for further proceedings, including a good-cause hearing. If the district court on remand decides that Nissan lacked good cause to relocate the Bloomington dealership, the district court could award Wayzata relief under Minn. Stat. § 80E.17. Thus, effective relief is available, and this appeal is not moot.

III.

Turning to the merits, this appeal requires us to interpret Minn. Stat. § 80E.14, subd. 1. The interpretation of a statute presents a question of law, which we review de novo. *Ekdahl v. Indep. Sch. Dist. No. 213*, 851 N.W.2d 874, 876 (Minn. 2014).

We begin with an overview of the statute. The MVSDA regulates contracts between manufacturers and dealers of new motor vehicles. Minn. Stat. § 80E.02. Minnesota Statutes § 80E.14, subd. 1, imposes requirements on a manufacturer that seeks to enter into a franchise establishing an additional dealership or relocating an existing dealership. In relevant part, the statute provides:

> In the event that a manufacturer seeks to enter into a franchise establishing an additional new motor vehicle dealership or relocating an existing new motor vehicle dealership within or into a relevant market area where the line make is then represented, the manufacturer shall, in writing, first notify each new motor vehicle dealer in this line make in the relevant market area of the intention to establish an additional dealership or to relocate an existing dealership within or into that market area.

7

Minn. Stat. § 80E.14, subd. 1. A "relevant market area" encompasses a 10-mile radius around an existing dealership. *Id.* Within 30 days of receiving notice, an affected dealership may commence a civil action challenging the relocation. *Id.* After a civil action is filed, "the manufacturer shall not establish or relocate" the proposed dealership until the district court finds that the establishment or relocation is supported by good cause. *Id.* But the notice and good-cause requirements do not apply to the "relocation of an existing dealer" within the "area of responsibility" described in the dealer's franchise agreement when the proposed relocation site is within five miles of the existing dealer's current location and is not within five miles of another dealer of the same line make. *Id.* It is undisputed that the relocation of the Eden Prairie dealership is within five miles of its former Bloomington location and is more than five miles from the Wayzata dealership. The issue in this case is whether, on the date that notice was required, Nissan intended to relocate an "existing dealer" pursuant to the exception.

## A.

Minnesota Statutes § 80E.14, subd. 1, exempts the "relocation of an existing dealer" from the statute's notice and good-cause requirements. Because the notice requirement and its exception must operate on the same date, the district court first addressed the date on which the statute requires notice. The district court held that the plain language of Minn. Stat. § 80E.14, subd. 1, requires notice on the date that the manufacturer develops an intention to establish or relocate a dealership. In the present

8

case, the district court found that Nissan developed the requisite intention on May 8, 2014—the date of Nissan's letter to Wayzata—at the latest.

The court of appeals disagreed. Under the court of appeals' holding, the notice requirement and existing-dealer exception of Minn. Stat. § 80E.14, subd. 1, apply on the date of the physical relocation of a dealership, not on the date that the manufacturer develops an intention to relocate a dealer. *See Wayzata Nissan*, 865 N.W.2d at 82 ("The plain language of the statute requires that we consider the status of the relocating dealer at the time of the relocation. Nothing in the statute requires or suggests examination of the legal status of the relocating dealer at any point other than at the time of relocation."). Thus, the court of appeals determined that notice was required on November 1, 2014— the date that McDaniels completed the relocation of the Bloomington dealership to Eden Prairie. *See id.* (stating that McDaniels was an "existing dealer" at "the time of the relocation in November 2014" because McDaniels "had operated as a Nissan dealer in Bloomington for over three months").

While Wayzata urges us to adopt the district court's analysis regarding the timing of the notice requirement, Nissan and McDaniels advocate for the court of appeals' analysis. It is undisputed that McDaniels was not an existing Nissan dealer as of May 8, 2014. The parties further agree that McDaniels was an existing Nissan dealer as of November 1, 2014. Accordingly, we must interpret the notice requirement in order to determine the date on which McDaniels was required to be an "existing dealer" for the exception to apply.

9

The purpose of statutory interpretation is to ascertain the intent of the Legislature. *Christianson v. Henke*, 831 N.W.2d 532, 536 (Minn. 2013). We interpret words according to their plain meaning, Minn. Stat. § 645.08(1) (2014), and consider a statute "as a whole so as to harmonize and give effect to all its parts," *In re UnitedHealth Grp. Inc.*, 754 N.W.2d 544, 563 (Minn. 2008). When the language of a statute is plain and unambiguous, we presume that the plain meaning is consistent with legislative intent. *Allan v. R.D. Offutt Co.*, 869 N.W.2d 31, 33 (Minn. 2015).

We need look no further than the plain language of Minn. Stat. § 80E.14, subd. 1, to discern its meaning. The statute contains four phrases relevant to our analysis. The notice requirement provides that when "a manufacturer *seeks to enter into a franchise*" to relocate a dealership, "the manufacturer shall . . . *first* notify" each affected dealer "*of the intention*" to relocate the dealership. Minn. Stat. § 80E.14, subd. 1 (emphasis added). And the existing-dealer exception refers to "the *proposed* relocation site." *Id.* (emphasis added). These provisions plainly require a manufacturer to notify a dealer of the "intention" to relocate an existing dealership *before* the manufacturer "seeks to enter" into a contract to relocate the dealership. *See id.*

McDaniels contends that the statute requires notice of a *manufacturer's* intention and that in this case it was the dealer, not the manufacturer, that initiated the Bloomington dealership's relocation. We disagree. The statute refers to a manufacturer that "seeks to enter into a *franchise* . . . relocating an existing new motor vehicle dealership." *Id.* (emphasis added). "Franchise" is defined as "the written agreement or

10

contract" between a manufacturer and a dealer that "grants to the dealer the right to market motor vehicles and which purports to fix the legal rights and liabilities of the parties to the agreement or contract." Minn. Stat. § 80E.03, subd. 8. Accordingly, the statute plainly requires notice when a manufacturer seeks to enter into a contract authorizing the relocation of a dealership. It is irrelevant whether the manufacturer was the first party to propose the relocation.

Accordingly, we hold that notice is required on the date that a manufacturer develops the intention to authorize a relocation, not on the date of the physical relocation of a dealership. The district court found that Nissan had developed a definite intention to authorize the relocation of the Bloomington dealership as of May 8, 2014, at the latest. This finding is supported by Nissan's May 8, 2014, letter stating its intention to relocate the Bloomington dealership. We, therefore, conclude that—absent the operation of the existing-dealer exception—Nissan was required to provide notice on or before May 8, 2014.

B.

Having decided that, absent an applicable exception, the statute required notice on or before May 8, 2014, we next address whether the existing-dealer exception applied on that date. The district court found that McDaniels was not a Nissan dealer on May 8, 2014. But the district court held that this fact is irrelevant, concluding that the MVSDA uses the words "dealer" and "dealership" interchangeably. Because Nissan intended to relocate an "existing dealership"—the Bloomington dealership—to Eden Prairie, the

11

district court held that the existing-dealer exception applied regardless of whether McDaniels was an existing Nissan dealer on the date that the statute required notice.

Wayzata challenges this aspect of the district court's analysis, contending that the word "dealer" is defined in the MVSDA to mean "a person," Minn. Stat. § 80E.03, subd. 3. Wayzata interprets the word "dealership," which is undefined in the statute, to mean the business and assets of a dealer. In response, Nissan and McDaniels cite provisions of the MVSDA that appear to use the words "dealer" and "dealership" interchangeably. *See, e.g.*, Minn. Stat. §§ 80E.09, subd. 1 (referring to both the rights of a dealer and "the extent the dealership makes other use of the property"), 80E.11, subd. 1 (referring to the "ownership . . . of a dealer"), 80E.14, subd. 1 (stating that "a dealership may commence a civil action"). To determine whether the existing-dealer exception applies, we must decide whether the district court correctly concluded that the Legislature used the words "dealer" and "dealership" synonymously in the MVSDA.

1.

When a word is defined in a statute, we are guided by the definition provided by the Legislature. *State v. Rick*, 835 N.W.2d 478, 482 (Minn. 2013). We generally apply a statutory definition each time the defined word is used in the statute. *Cf. id.* This presumption is overcome, however, when it is impossible to use a statutory definition consistently without violating our principles of statutory interpretation. *See id.* at 483. For example, in *State v. Rick*, we declined to apply the statutory definition of a word to a specific provision of a statute when doing so would violate the canon against surplusage

12

and the rules of grammar.  *Id.*  When there is no applicable statutory definition, we often consult dictionary definitions to discern a word's plain meaning.  *See Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 301 (Minn. 2014); *see also Rick*, 835 N.W.2d at 483-84 (consulting dictionaries when a statutory definition was inapplicable).

Turning to Minn. Stat. § 80E.14, subd. 1, we begin our analysis by addressing the relevant definitions of "dealer" and "dealership."  The definitions provided in the MVSDA apply throughout Minn. Stat. §§ 80E.01-.17 "unless the context otherwise requires."  Minn. Stat. § 80E.03, subd. 1.  The MVSDA defines "dealer" as

> a person who in the ordinary course of business is engaged in the business of selling new motor vehicles to consumers or other end users and who holds a valid sales and service agreement, franchise, or contract, granted by a manufacturer, distributor, or wholesaler for the sale of its motor vehicles.

*Id.*, subd. 3.  Statutes often use the word "person" to describe corporations and other business entities.  *See* Minn. Stat. § 645.44, subd. 7 (2014) (stating that in statutes, " '[p]erson' may extend and be applied to bodies politic and corporate, and to partnerships and other unincorporated associations"); *Magnusson v. Am. Allied Ins. Co.*, 290 Minn. 465, 474, 189 N.W.2d 28, 34 (1971).  Accordingly, the relevant statutory definition of "dealer" is a person or entity engaged in the business of selling new motor vehicles pursuant to a franchise with a manufacturer.

For context, we also will address the meaning of the word "dealership," which is not defined in the MVSDA.  Dictionaries define "dealership" as either a franchise, *The American Heritage Dictionary of the English Language* 466 (5th ed. 2011); the business

13

of a dealer, *Webster's Third New International Dictionary, Unabridged* 581 (2002); or a dealer's "trading establishment," 4 *The Oxford English Dictionary* 297 (2d ed. 1989, reprt. 1991). In the MVSDA, the Legislature generally used the word "dealership" to signify a "trading establishment" or "business." *See, e.g.*, Minn. Stat. §§ 80E.07, subd. 1(a) (referring to a "change in ownership of the . . . dealer's dealership"), 80E.12(f) (referring to the "means by . . . which the dealer finances the operation of the dealership"), 80E.13(j) (referring to a dealer's transfer or assignment of a dealership), 80E.135, subd. 1a(1) (referring to contracts that require a dealer to "establish or maintain exclusive dealership facilities").

With these definitions of "dealer" and "dealership" in mind, we next address whether the statutory definition of "dealer" applies to the existing-dealer exception in Minn. Stat. § 80E.14, subd. 1. We conclude that it does, because the exception expressly uses the word "dealer." The Legislature intended for the statutory definition of "dealer" to apply throughout the MVSDA "unless the context otherwise *requires*." Minn. Stat. § 80E.03, subd. 1 (emphasis added). Nothing in the context of the existing-dealer exception requires us to ignore the statutory definition of "dealer."

And, setting aside the Legislature's instruction that the definitions in the MVSDA apply throughout the chapter "unless the context otherwise requires," *id.*, we have ignored a statutory definition only when applying the definition would violate our canons of statutory interpretation. *See Rick*, 835 N.W.2d at 483. Applying the statutory definition of "dealer" to the existing-dealer exception does not violate any principles of

14

statutory interpretation. To the contrary, the word "dealer" is followed by the phrase "within its area of responsibility." Minn. Stat. § 80E.14, subd. 1. The phrase "its area of responsibility" only makes sense when preceded by a reference to a person or entity—in other words, a dealer.

We conclude that the phrase "existing dealer" in Minn. Stat. § 80E.14, subd. 1, refers to the person or entity that is operating a dealership on the date that the manufacturer develops a definite intention to relocate the dealership. On May 8, 2014, Nissan intended to approve the relocation of the Bloomington dealership to Eden Prairie. By the terms of the asset purchase agreement that precipitated the relocation, the relocated dealership was not to be operated by Feldmann—the entity that was operating the dealership on May 8. Rather, the relocated dealership would be operated by a new dealer—McDaniels. Accordingly, the existing-dealer exception did not apply to the relocation of the Bloomington dealership, and Wayzata was entitled to notice and a good-cause hearing.

2.

As a final matter, Nissan and McDaniels contend that our decision will create absurd results. They observe, as did the district court, that Wayzata would have no statutory right to challenge the Bloomington dealership's relocation if either (1) Feldmann had sold the Bloomington dealership after relocating or (2) McDaniels had decided to relocate only after purchasing the Bloomington dealership. For this reason,

15

the district court concluded that there is no reason why the "compressed nature of the transactions in this case" requires a different result.

When interpreting statutes, we presume that the Legislature did not intend absurd or unreasonable results. *State v. Koenig*, 666 N.W.2d 366, 372 (Minn. 2003); *accord* Minn. Stat. § 645.17(1) (2014). But this canon of construction applies only to ambiguous statutes, except in the "exceedingly rare case in which the plain meaning of the statute 'utterly confounds' the clear legislative purpose of the statute." *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 651 (Minn. 2012) (quoting *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 639 (Minn. 2006)).

Arguably, Wayzata would be equally affected by the relocation of *any* dealer into Wayzata's market area, regardless of whether a new dealer or an existing dealer is being relocated. But, even if true, that fact would not necessarily lead to an absurd result. The exception in Minn. Stat. § 80E.14, subd. 1, prioritizes the interests of existing dealers over the interests of new dealers. The Legislature could have created the existing-dealer exception to accommodate dealers that have occupied a particular geographic area, but find it necessary to slightly shift their location. That an existing dealer, but not a new dealer, may take advantage of the existing-dealer exception certainly does not confound any clear legislative purpose.

## VI.

To summarize, we affirm the court of appeals' holding that this appeal is not moot, because the district court may still grant effective relief. But we reverse the court of

appeals' decision on the merits. We hold that Minn. Stat. § 80E.14, subd. 1, requires notice on the date that a manufacturer develops an intention to authorize the establishment or relocation of a dealership. We further hold that the existing-dealer exception applies only to the "relocation of an existing dealer," Minn. Stat. § 80E.14, subd. 1, and that an "existing dealer" is the person or entity operating the dealership at the time that the manufacturer develops the requisite intention, Minn. Stat. § 80E.03, subd. 3. Because McDaniels was not an "existing dealer" on the date that Nissan developed a definite intention to authorize the relocation of the Bloomington dealership, the existing-dealer exception does not apply. We, therefore, remand to the district court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.