KLAPHAKE, Judge*
Appellant challenges the denial of her application for Minnesota supplemental aid (MSA). After a hearing, respondent-commissioner concluded that Minn. Stat. § 256D.024, subd. 1 (2016), unambiguously conditions appellant's receipt of MSA benefits on submission to random drug testing. The district court concluded on appeal that the drug-testing requirement within section 256D.024, subdivision 1(a), does not violate the doctrine of unconstitutional conditions. On appeal to this court, appellant argues that the commissioner erred in concluding that the statute unambiguously applies to her, and the district court erred in concluding that the statute is constitutional. Because the statute is ambiguous, and because the canons of construction resolve the ambiguity in favor of appellant, we reverse.
FACTS
In January 2000, appellant Kim Verhein was convicted of fifth-degree possession of a controlled substance and sentenced to 17 months' imprisonment. At some point after her release from a correctional facility in 2001, she applied for and began receiving MSA benefits.
In November 2013, the Minnesota Department of Human Services informed respondent Washington County Community Services (the county) that appellant had a post-July 1, 1997, drug conviction. The county notified appellant that, under section 256D.024, subdivision 1(a), she is required to undergo random drug testing as a condition of receiving MSA benefits. In September 2015, the county notified appellant that her random drug testing would *99 occur on September 16, 2015. Appellant appeared for testing, but refused to provide a sample. The county terminated appellant's MSA benefits effective November 1, 2015.
In June 2016, appellant reapplied for MSA benefits. The county denied appellant's application and informed her that her prior refusal to submit to testing rendered her ineligible to receive benefits for five years. Appellant appealed the denial of her application to respondent Commissioner of the Minnesota Department of Human Services (the commissioner), arguing that the drug-testing requirement did not apply to her, her refusal to submit to testing did not render her ineligible for a five-year period, a permanent drug-testing requirement violates the Fourth Amendment, and she is entitled to a curative payment for unpaid benefits dating back to November 1, 2015. After a hearing, the commissioner concluded that section 256D.024, subdivision 1(a), unambiguously requires random drug testing of persons convicted of certain felony drug offenses after July 1, 1997, as a condition of receiving MSA benefits. Appellant requested reconsideration of the decision. The commissioner denied the request.
In January 2017, appellant appealed the commissioner's decision to the district court. Appellant argued that the testing requirement within section 256D.024, subdivision 1(a), is unconstitutional because it conditions her receipt of benefits on a relinquishment of her Fourth Amendment rights. The district court affirmed the commissioner's decision in part, concluding that the plain and unambiguous language of the statute conditions receipt of benefits for persons convicted of a drug offense after July 1, 1997, on submission to random drug testing. The district court concluded that appellant's Fourth Amendment challenge failed, citing precedent of this court indicating that the doctrine of unconstitutional conditions does not apply to the Fourth Amendment. The district court remanded the issue of whether a five-year ineligibility period applied to test refusals.[1]
This appeal follows.
ISSUES
I. Is the appeal moot?
II. Does Minn. Stat. § 256D.024, subd. 1, unambiguously condition eligibility for MSA benefits on random drug testing of applicants and recipients who have completed a court-ordered sentence for a qualifying drug conviction more than five years prior?
III. Is appellant entitled to a curative payment?
ANALYSIS
I.
As a preliminary matter, the commissioner argues that this appeal is moot because appellant only appealed the 2016 denial of her application, and the commissioner reversed that denial on remand. Appellant argues that the case presents a live controversy because she has challenged whether Minn. Stat. § 256D.024, subd. 1, requires her to submit to drug testing as a condition of receiving benefits, an issue that was not resolved when the case was remanded.
*100 The issue of whether an appeal is moot is a legal question subject to de novo review. In re McCaskill , 603 N.W.2d 326, 327 (Minn. 1999). "[Appellate courts] consider only live controversies, and an appeal will be dismissed as moot when intervening events render a decision on the merits unnecessary or an award of effective relief impossible. But an appeal is not moot when a party could be afforded effective relief." Wayzata Nissan, LLC v. Nissan N. Am., Inc. , 875 N.W.2d 279, 283 (Minn. 2016) (citations omitted). "Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Dean v. City of Winona , 868 N.W.2d 1, 4-5 (Minn. 2015) (quotations omitted). This court may not issue advisory opinions. Farm Bureau Mut. Ins. Co. v. Schwan , 687 N.W.2d 388, 391 (Minn. App. 2004).
Appellant appealed the denial of her application and demanded payments dating back to the termination of her benefits in 2015. On remand from the district court's order, the commissioner reversed the denial of appellant's application, permitting it to be processed. But appellant's receipt of benefits continues to be conditioned on compliance with testing requirements. It is this condition that appellant challenged below and continues to challenge on appeal. We therefore conclude that the appeal presents a live controversy between the two parties, and this court may afford effective relief.
Even if the commissioner's action on remand rendered this appeal technically moot, we conclude that the appeal is reviewable because it is "functionally justiciable." "[Appellate courts] have the discretion to consider a case that is technically moot when the case is functionally justiciable and presents an important question of statewide significance that should be decided immediately." Dean , 868 N.W.2d at 6 (quotations omitted). The exception is to be narrowly applied, but may be satisfied if "the record contains the raw material (including effective presentation of both sides of the issues raised) traditionally associated with effective judicial decision-making." Id. (quotation omitted).
The parties have effectively presented both sides of the controversy, and the applicability and constitutionality of Minn. Stat. § 256D.024, subd. 1, affects all persons who apply for or receive general assistance or MSA benefits and who also have a post-July 1, 1997, felony drug conviction. The commissioner provides guidance to all counties on how to apply Minn. Stat. § 256D.024, subd. 1, when processing applicants' requests for benefits. This presents an issue of statewide significance that should be decided immediately. See In re Guardianship of Tschumy , 853 N.W.2d 728, 740-41 (Minn. 2014) (reaching merits of a moot issue to clarify the scope of guardians' authority to remove life-support for a ward because of the thousands of wards within the state); Kahn v. Griffin , 701 N.W.2d 815, 823 (Minn. 2005) (considering merits of an election procedure because it was similar to procedures used in other Minnesota cities). We therefore proceed to the merits of this appeal.
II.
MSA benefits are available to aged, blind, or disabled persons who receive supplemental security income from the federal government under 42 U.S.C. §§ 1381 - 1383f (2012 & Supp. 2016). Minn. Stat. § 256D.425, subd. 1 (2016). County social services agencies, under the supervision of the commissioner, are required to administer and distribute benefits to recipients of general assistance and supplemental security income. Minn. Stat. §§ 256.01, subd. 2 *101 (Supp. 2017), 393.07, subd. 2 (2016). An applicant for MSA benefits must meet the eligibility requirements under the general-assistance chapter, Minn. Stat. §§ 256D.01 -.54 (2016 & Supp. 2017). Minn. Stat. § 256D.405, subd. 1(a) (requiring the agency to determine an applicant's eligibility under "this chapter").
Section 256D.024, subdivision 1(a), limits the eligibility for benefits under the general-assistance chapter if an individual has been convicted of certain drug crimes after July 1, 1997. The statute provides:
If an applicant or recipient has been convicted of a drug offense after July 1, 1997, the assistance unit[2] is ineligible for benefits under this chapter until five years after the applicant has completed terms of the court-ordered sentence, unless the person is participating in a drug treatment program, has successfully completed a drug treatment program, or has been assessed by the county and determined not to be in need of a drug treatment program. Persons subject to the limitations of this subdivision who become eligible for assistance under this chapter shall be subject to random drug testing as a condition of continued eligibility and shall lose eligibility for benefits for five years beginning the month following:
(1) any positive test result for an illegal controlled substance; or
(2) discharge of sentence after conviction for another drug felony.
Minn. Stat. § 256D.024, subd. 1(a). "Drug offense" is defined as "a conviction that occurred after July 1, 1997, of sections 152.021 to 152.025, 152.0261, 152.0262, or 152.096" and includes convictions in other jurisdictions for "possession, use, or distribution of a controlled substance, or conspiracy to commit any of these offenses, if the offense occurred after July 1, 1997, and the conviction is a felony offense in that jurisdiction, or in the case of New Jersey, a high misdemeanor." Id. , subd. 1(b).
Appellant challenges the commissioner's conclusion that section 256D.024, subdivision 1, requires her to submit to chemical testing as a condition of receiving MSA benefits because of her conviction for fifth-degree possession of a controlled substance in 2000. She argues that the commissioner misinterprets the plain language of the statute by applying the drug-testing provision to persons who completed the court-ordered sentence more than five years prior to applying for or receiving benefits. In the alternative, she argues that the statute is ambiguous and that the canons of construction dictate a narrower application of the statute.
Judicial review of the commissioner's order is authorized under Minn. Stat. § 256.045, subds. 3(a)(1), 7, 9 (2016 & Supp. 2017). The scope of review is governed by Minn. Stat. § 14.69 (2016). Zahler v. Minn. Dep't of Human Servs. , 624 N.W.2d 297, 301 (Minn. App. 2001), review denied (Minn. June 19, 2001). This court may affirm, remand, reverse or modify the commissioner's decision if appellant shows that the decision is affected by a violation of constitutional provisions or an error of law, and her substantial rights were prejudiced. Minn. Stat. § 14.69. We review the commissioner's order independently and give no deference to the district court's review. Zahler , 624 N.W.2d at 301.
This court reviews questions of statutory interpretation de novo. Wayzata Nissan, LLC , 875 N.W.2d at 284. The object of statutory interpretation is to ascertain *102 the intent of the legislature. Minn. Stat. § 645.16 (2016). When the intent of the legislature is clear from a statute's plain and unambiguous language, we interpret the statute according to its plain meaning and do not consider other principles of statutory interpretation. Binkley v. Allina Health Sys. , 877 N.W.2d 547, 550 (Minn. 2016). If the statute is ambiguous, we may look beyond statutory language to discern legislative intent. Staab v. Diocese of St. Cloud , 813 N.W.2d 68, 73 (Minn. 2012). A statute is ambiguous if, as applied to the facts of the case, it is susceptible to more than one reasonable interpretation. Id. at 72-73.
The parties agree that the first sentence of the statute is unambiguous. It places a limitation on certain drug offenders' eligibility for benefits during the five years after completion of a court-ordered sentence unless certain treatment options are completed, underway, or unnecessary.
The second sentence is the crux of the parties' disagreement. Both parties agree that the sentence is unambiguous, but they disagree on the meaning of the statute. Appellant argues that "[p]ersons subject to the limitations of this subdivision who become eligible" refers to persons within the ineligibility period who become eligible by satisfying one of the three conditions. Appellant also argues that she is not subject to the limitations of the subdivision because she is not within the five-year ineligibility period. The commissioner argues that the statute refers to all persons with a post-July 1, 1997, qualifying conviction who were ineligible for benefits because of the conviction and who later became eligible for benefits.
Because the dispute centers on the language "[p]ersons subject to the limitations of this subdivision who become eligible," we begin by ascertaining the plain meaning of the words at issue, looking to the definitions of the words and the rules of grammar. Minn. Stat. § 645.08(1) (2016) ; Shire v. Rosemount, Inc. , 875 N.W.2d 289, 292 (Minn. 2016). "Limitation" is commonly defined as "[a] restriction." Black's Law Dictionary 1012 (9th ed. 2009); The American Heritage Dictionary 1044 (3d ed. 1992). "Subject," frequently followed by "to," has been defined as "suffering a particular liability or exposure" or as "likely to be conditioned, affected, or modified in some indicated way." Webster's Third New International Dictionary , 2275 (2002). Likewise, "subject to" has been defined as "governed or affected by." Black's Law Dictionary 1425 (6th ed. 1990).
One reading of "[p]ersons subject to the limitations of this subdivision who become eligible" coincides with the commissioner's interpretation. In such an interpretation, "limitations of this subdivision" may refer to the restrictions on the scope of the statute's application- section 256D.024, subdivision 1, only applies to certain types of drug crimes and requires a conviction date after July 1, 1997. It does not apply to persons with drug convictions from 1996, for example. Under this interpretation, persons with the required qualities "who become eligible for assistance under this chapter" are required to complete random drug testing as a condition of continued eligibility. In such an interpretation, it does not matter when or how the person becomes eligible for benefits.
We conclude that the subdivision has an alternative, reasonable interpretation when applied to the facts of this case. The statute clearly relates to a five-year restriction of benefit eligibility for persons defined in the statute. The five-year eligibility restriction is also a "limitation" contained within the subdivision. Appellant argues that she is no longer subject to this limitation because it has been more than five years since she completed her court-ordered *103 sentence. The only manner in which appellant could suffer or be exposed to an additional five-year ineligibility period would be if she committed an additional qualifying crime. Under this interpretation, appellant is no longer a person "subject to the limitations of this subdivision."
However, the commissioner, accepting the ineligibility period as a limitation, argues that appellant's prior subjection to the five-year period of ineligibility coupled with her status as someone who is now eligible for assistance under the chapter satisfies the "[p]ersons subject to the limitations of this subdivision who become eligible" requirement. Reading the statute as a whole, it is clear the phrases "[p]ersons subject to the limitations of this subdivision" and "who become eligible" present further ambiguity.
First, the former phrase is written in present tense, implying the individual must be "subject to the limitations of this subdivision" at the time he or she becomes eligible for assistance under the chapter. Whether someone is presently subject to the limitations of the subdivision depends on whether the limitations are defined solely by the details of the individual's criminal conviction, or whether it relates to the ineligibility period. Under the latter, someone could "become eligible for assistance under this chapter" years after the ineligibility period has ended and thus not be "subject to the limitations of [the] subdivision" at that time.
Second, the remainder of the subdivision provides an example of when a person may be both "subject to the limitations of this subdivision" and "become eligible for assistance under this chapter." Those persons are the people who qualify for one of the three exceptions to the five-year period of ineligibility. Those persons are presumptively ineligible for benefits upon conviction until they are determined to have completed treatment, to be presently in treatment, or to not need treatment. The persons whom the county determines have satisfied one of those conditions are persons who are subject to the ineligibility period referenced in the subdivision, but who nevertheless become eligible. For example, one exception that enables a person to become eligible for benefits is if the person is "participating in a drug treatment program." If the person otherwise qualifies for benefits under the chapter and is in a treatment program, the person may apply for and receive benefits. However, presumably, if the person fails to participate in a treatment program after the application for benefits is approved, the person would lose benefits and continue to be subject to the five-year ineligibility period. See Minn. Stat. § 256P.04, subd. 8 (2016) (requiring counties to determine recertification eligibility annually).
Having concluded that the statute may be interpreted in several reasonable yet conflicting ways, we examine the canons of construction to effectuate the intent of the legislature. When ascertaining the intention of the legislature, we may consider:
(1) the occasion and necessity for the law;
(2) the circumstances under which it was enacted;
(3) the mischief to be remedied;
(4) the object to be attained;
(5) the former law, if any, including other laws upon the same or similar subjects;
(6) the consequences of a particular interpretation;
(7) the contemporaneous legislative history; and
(8) legislative and administrative interpretations of the statute.
Minn. Stat. § 645.16.
Section 256D.024 became law as part of a larger modification to Minnesota's assistance *104 programs. See 1997 Minn. Laws. ch. 85, arts. 1-3, at 500-633 (implementing and amending programs related to temporary assistance for needy families (TANF), food stamps, and general assistance). Modifications to Minnesota's assistance programs were necessitated by the federal government's passage of legislation concerning grants of federal money to states for assistance to needy families. See 42 U.S.C. §§ 601 - 619 (2012 & Supp. 2016). The federal legislation ended an entitlement program that provided aid to families with dependent children, and replaced it with block grants to the states. Minn. Stat. § 256J.01, subd. 2 (2016) ; see 42 U.S.C. § 603(a). In response to the federal legislation, Minnesota created the Minnesota Family Investment Program (MFIP), which includes cash and food assistance programs, as well as payments to third-party vendors who provide assistance to qualifying individuals. Minn. Stat. §§ 256J.01, subd. 1, .28, .35, .395 (2016).
As part of the act creating MFIP, the Minnesota legislature repealed and amended portions of the general-assistance chapter. 1997 Minn. Laws. ch. 85, art. 3, §§ 24, 25, 56, at 612-14, 633. The general-assistance chapter was amended to apply only to "single adults, childless couples, or children as defined in section 256D.02, subdivision 6, ineligible for federal programs who are unable to provide for themselves." 1997 Minn. Laws. ch. 85, art. 3, § 24, at 612. Families who had previously received general-assistance benefits became governed by MFIP. See Minn. Stat. § 256J.01, subd. 3 (Supp. 2017).
In making these changes to the general-assistance chapter, the legislature also adopted Minn. Stat. § 256D.024. Different versions of the senate bill that became section 256D.024 indicate that the senate originally sought blanket ineligibility for TANF benefits of persons with a qualifying conviction, S.F. 1, introduction (Jan. 9, 1997), and then changed the ineligibility period to two years for persons with a qualifying conviction seeking general-assistance benefits, S.F. 1, first, second, and third engrossments (Mar. 13 & 20, 1997). The house of representatives sought to add a five-year period of ineligibility and the language, "Persons subject to the limitations imposed by this section who become eligible for assistance under this chapter shall be subject to random drug testing as a condition of continued eligibility ...." State of Minnesota, Journal of the House , 80th Sess. 902, 1898 (Mar. 20 & Apr. 10, 1997). Both houses eventually passed the legislation as it stands today. The legislative history of the bill is inconclusive on whether the legislature intended the person to be presently subject to the period of ineligibility in order to be subject to the drug-testing requirement. We therefore look to provisions on similar subjects.
The federal legislation that necessitated changes to Minnesota's assistance programs includes a provision that renders persons ineligible for food assistance and federally-funded TANF benefits if the person is convicted of a felony controlled-substance crime. 21 U.S.C. § 862a(a) (2012). But individual states may opt out of the prohibition, or limit the period of ineligibility. Id. , (d)(1) (2012). Minnesota, in creating MFIP, opted to place certain limitations on applicants with prior qualifying drug convictions, but did not render those applicants ineligible permanently. Minn. Stat. § 256J.26 (2016). Applicants and participants in the food-support program of MFIP, "who have been convicted of a drug offense that occurred after July 1, 1997, may, if otherwise eligible, receive food stamps or food support if the convicted applicant or participant is subject to random drug testing as a condition of continued eligibility." Id. , subd. 1(b). At first glance, this provision appears to indicate *105 that a person will be subject to drug testing indefinitely for receipt of food-support benefits. However, under the subdivision, "drug offense" is defined as "an offense that occurred during the previous ten years from the date of application or recertification." Id. , subd. 1(c). For other MFIP benefits, an applicant or participant who committed a drug offense "during the previous ten years from the date of application or recertification" is "subject to random drug testing as a condition of continued eligibility." Id. , subd. 1(a)(2).
Under MFIP, participants are required to complete recertification forms for continued eligibility, and counties are required to recertify participants' eligibility "in an annual interview." Minn. Stat. §§ 256J.30, subd. 4, 256P.04, subd. 8 (2016). Therefore, recipients are only subject to drug-testing requirements for ten years following the drug offense; upon recertification after the ten-year period, a recipient's prior crime no longer qualifies for testing purposes.
Section 256D.024, subdivision 1(b), does not include the ten-year limitation in its definition of "drug offense." It only limits the drug offenses to post-July 1, 1997 convictions. Minn. Stat. § 256D.024, subd. 1(b). But the language at issue in this case, "[p]ersons subject to the limitations of this subdivision who become eligible for assistance," was not used by the legislature in drafting the drug-testing requirements under section 256J.26. Rather, the legislature used precise language to indicate that the drug-testing requirements under MFIP are limited to recipients and applicants within the ten-year period following a conviction, and limited in duration because of the annual recertification requirement. While indicating the legislature's intent to limit the duration of drug-testing provisions in parts of the same overhaul of state assistance programs, section 256J.26 does not answer the question of what the legislature intended by the language at issue in this case. But it does not follow that section 256D.024 's drug-testing period is unlimited in duration.
The agency's interpretation of the provision in its manuals indicates that the drug-testing provision is intended to be limited in the manner advocated by appellant. Generally, this court "must give effect to an agency's regulation containing a reasonable interpretation" of a statute. Christensen v. Harris Cty. , 529 U.S. 576, 586-87, 120 S.Ct. 1655, 1662, 146 L.Ed.2d 621 (2000) (citing Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc. , 467 U.S. 837, 842-44, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) ); see Auer v. Robbins , 519 U.S. 452, 461, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997) (indicating an agency's interpretation of its regulations is controlling unless plainly erroneous); St. Otto's Home v. Minn. Dep't of Human Servs. , 437 N.W.2d 35, 40 (Minn. 1989) (giving "considerable deference" to an agency's interpretation of its own regulations). But if an agency has not promulgated a regulation on the issue presented, courts will give the agency's interpretation "a lesser form of deference." In re Gillette Children's Specialty Healthcare , 867 N.W.2d 513, 522 (Minn. App. 2015) (citing Skidmore v. Swift & Co. , 323 U.S. 134, 139-40, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) ), aff'd 883 N.W.2d 778 (Minn. 2016). In such a case, our deference to an agency's rulings, interpretations, or opinions will depend "upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors that give it power to persuade, if lacking power to control." Young v. United Parcel Serv., Inc. , --- U.S. ----, 135 S.Ct. 1338, 1351-52, 191 L.Ed.2d 279 (2015) (citing Skidmore , 323 U.S. at 140, 65 S.Ct. at 164 ).
*106 The commissioner has promulgated regulations concerning eligibility requirements under the general-assistance program. Minn. R. 9500.1200 - .1272 (2017). These regulations are silent concerning any drug-testing requirements. However, the department of human services does create and disseminate a combined manual to county financial workers which "gives financial workers a complete, authoritative , concise set of provisions to determine eligibility for the cash and food programs and to issue client benefits." Minn. Dep't of Human Servs., Combined Manual (CM) , http://www.dhs.state.mn.us/main/idcplg?IdcService=GET_DYNAMIC_CONVERSION& RevisionSelectionMethod=LatestReleased& dDocName=id_016956 (last updated June 1, 2018) (emphasis added). A provision in a manual used by an agency can "approach[ ] the status of a formal rule of law of the agency." Doe v. State, Dep't of Pub. Welfare , 257 N.W.2d 816, 819 (Minn. 1977).
The commissioner, through the combined manual, provides the following direction to all county financial workers charged with administering general assistance and MSA programs:
A unit is ineligible if it contains a member who admits in writing on the CAF that he/she is convicted of a drug felony on or after 7-1-97. This also applies if the county agency has other reliable verified documentation supporting its position about a unit member's drug conviction, including the list of convicted drug felons provided by DHS.
The ENTIRE unit is ineligible for 5 years from the date the convicted person completes terms of the court-ordered sentence, UNLESS the convicted member meets 1 of the following conditions:
Participates in a drug treatment program.
OR
Has successfully completed a drug treatment program.
OR
Has been assessed by the county as NOT needing a drug treatment program.
If the convicted person meets 1 of the above conditions, the unit may receive benefits. He/she is subject to random drug testing as a condition of continued eligibility.
Minn. Dep't of Human Servs., Combined Manual: Drug Felons (Jan. 2015), http://www.dhs.state.mn.us/main/idcplg?IdcService=GET_DYNAMIC_CONVERSION& RevisionSelectionMethod=LatestReleased& dDocName=CM_00112703. A natural reading of the combined manual indicates that a person is only subject to random drug testing if "the convicted person meets 1 of the above conditions," and the only aspects of the policy labeled as "conditions" are the three treatment-related exceptions to the five-year ineligibility period. See id . The department's manual, as written, is contrary to the position the commissioner now takes on appeal.
The agency's interpretation of drug-testing requirements for MSA recipients has likewise been inconsistent. Prior to 2013, the combined manual did not direct counties to require drug testing of MSA recipients with a prior qualifying drug conviction. See Minn. Dep't of Human Servs., Combined Manual : Description of Changes Attachment 2 (Oct. 2013), http://www.dhs.state.mn.us/main/groups/county_access/documents/pub/dhs16_178758.pdf. The combined manual specifically exempted MSA recipients from the drug-testing requirements of section 256D.024, indicating "no provisions" for drug testing. Id. The commissioner's interpretation of section 256D.024 in this appeal-to condition *107 appellant's receipt of MSA benefits on submission to drug testing-cannot be considered consistent or longstanding for purposes of deference. See Young , --- U.S. ----, 135 S.Ct. at 1351-52.
The legislature, in passing sweeping modifications to state assistance programs, expressed an intent to limit drug testing of recipients to a certain and definite period following a conviction. Granting effect to the commissioner's current interpretation of the statute would require persons receiving MSA or general-assistance benefits to undergo chemical testing indefinitely, even if decades have passed since the completion of a court-ordered sentence. In light of these considerations, and the department's inconsistent and contrary interpretations of the statute, we conclude that "[p]ersons subject to the limitations of this subdivision who become eligible for assistance under this chapter" applies to persons within the five-year period of ineligibility who become eligible through satisfaction of one of the three treatment-related conditions listed in section 256D.024, subdivision 1(a). Those persons are subject to the limitations of the subdivision, and thus are subject to random drug testing for continued eligibility. After the passage of the five-year period, those persons are no longer "subject to the limitations of [the] subdivision" and therefore are no longer required to undergo chemical testing for receipt of benefits. Those who, like appellant, have long since completed their court-ordered sentences and five-year period of ineligibility are not "[p]ersons subject to the limitations of this subdivision" and are not required to undergo chemical testing for receipt of benefits under chapter 256D.
III.
Appellant challenged the underpayment of MSA benefits based on the agency's misapplication of section 256D.024, subdivision 1(a).
"A county agency must issue a corrective payment for underpayments made to a participant or to a person who would be a participant if an agency or client error causing the underpayment had not occurred." Minn. Stat. § 256P.08, subd. 8 (2016). "Corrective payments are limited to 12 months prior to the month of discovery." Id.
Because the agency erred in premising appellant's receipt of MSA benefits on the condition of random drug testing, she is entitled to curative payments stemming from the agency's error. In July 2016, appellant made the commissioner aware of the error and the underpayment of benefits dating back to November 2015. Because the commissioner was notified of the error, and because all underpayments sought by appellant stemmed from the preceding 12-month period, the commissioner was obligated to issue full corrective payments based on the commissioner's erroneous application of drug-testing conditions to appellant. The commissioner erred in its decision to refuse to make corrective payments to appellant dating from November 2015.
DECISION
Minnesota Statutes section 256D.024, subdivision 1(a), is subject to multiple interpretations concerning the limitations of the subdivision and its application. Applying the canons of construction, and in light of the varying positions and interpretations of the statute endorsed by the department of human services, we conclude that the condition of random drug testing applies to persons who become eligible for benefits under chapter 256D during the five-year period following completion of a court-ordered sentence for a qualifying drug crime. The drug-testing condition *108 does not extend beyond the five-year period.
Reversed.
Dissenting, Johnson, Judge

Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

On remand, the commissioner reversed the denial of appellant's application for benefits, directing the county to "reinstate the application for processing and to provide [a]ppellant an opportunity to comply with the drug testing requirement." The commissioner concluded that Minn. Stat. § 256D.024, subd. 1(a), requires testing in order to receive benefits, but it does not make an applicant ineligible for a five-year period if the applicant refuses to take a test.

Assistance unit is defined as "an individual who is, or an eligible married couple who live together who are, applying for or receiving benefits." Minn. Stat. § 256.02, subd. 1a.